2013 OK CIV APP 61

**Kris AGRAWAL and Vimala Agrawal, Plaintiffs/Appellants,**

**v.**

**DUKE ENERGY FIELD SERVICES, L.P., Kimray, Inc., and Hanover Compression Limited Partnership, Defendants/Appellees.**

No. 109,053.

Court of Civil Appeals of Oklahoma, Division No. 1.

March 15, 2013.

Certiorari Denied June 27, 2013.

G. Steven Stidham, Tulsa, Oklahoma, for Appellants.

Ryan A. Ray, Tulsa, Oklahoma, for Appellee, Duke Energy Field Services, L.P.

Stephen R. McCalla, Margaret C. Kerr, Chickasha, Oklahoma, for Appellee, Kimray, Inc.

J. Christopher Davis, Jonathan Cartledge, Tulsa, Oklahoma, for Appellee, Hanover Compression Limited Partnership.

LARRY JOPLIN, Chief Judge.

¶ 1 Appellants seek review of the trial court's orders dismissing Kris Agrawal's personal injury claim and Vimala Agrawal's corresponding loss of consortium claim upon the Defendants' Renewed Motion to Dismiss based upon fabrication of evidence related to perjury. Plaintiff/Appellant Kris Agrawal's claim was dismissed by the trial court on January 22, 2009. Agrawal appealed this decision and the appellate court dismissed the appeal as premature because the trial court failed to address the loss of consortium claim of Plaintiff's wife in the original order of dismissal.[1] On December 2, 2010, the trial court issued a "supplemental order of dismissal" as to Vimala Agrawal's derivative loss of consortium claim.[2]

¶ 2 After the dismissal of Vimala Agrawal's loss of consortium claim, Appellants appealed the dismissal of both Kris Agrawal's claims and Vimala Agrawal's loss of consortium claim. Defendants objected to Appellants' (Kris and Vimala Agrawal) amended petition in error and asserted the trial court was not authorized to accept Appellants' designation of record and that Kris Agrawal was not properly listed as an appellant on the Decem-

ber 29, 2010 petition in error, rendering the amended petition in error, filed January 24, 2011, ineffective for the pursuit of Kris Agrawal's appeal. Defendants argued only Vimala Agrawal's loss of consortium claim was addressed in the December 29, 2010 petition in error and no additional parties could be added. By order of the Oklahoma Supreme Court, March 10, 2011, the court order stated that the trial court was authorized to accept the designation of record and "[b]oth Kris and Vimala Agrawal are listed as appellants in the style on the petition in error filed on December 30, 2010. *Bane v. Anderson, Bryant & Co.*, 1989 OK 140, 786 P.2d 1230. This appeal shall proceed." [3]

¶ 3 This case arose on September 16, 2001, when Plaintiff/Appellant, Kris Agrawal, and his former co-plaintiff, William Green, were injured as a result of a gas pressure vessel explosion while working on an oil and gas lease in Jenks, Oklahoma. Agrawal lost his right leg as a result of the explosion and spent weeks in the hospital. Green was injured as well. Agrawal and Green brought suit against the above named Defendants in January 2002. Vimala Agrawal brought her derivative loss of consortium claim on September 15, 2003 under a different case, which was consolidated with the earlier case of her husband on January 8, 2004.

¶ 4 On December 11, 2003, William Green, Agrawal's former co-plaintiff, gave his first deposition in the case. One of the subjects of the deposition was a Taylor safety valve, a type of pressure valve, attached to the tank remnants and visible in photos of the exploded tank. During Green's deposition, Defendants' counsel asked Green questions about the safety valve, when it had been installed and who had installed it. Green testified he had installed the valve about three weeks prior to the explosion. Six months after the

---

1. The Court of Civil Appeals order dismissing the appeal as premature was rendered in appellate Case No. 106,825.

2. The trial court concluded its December 2, 2010 dismissal of Vimala Agrawal's appeal as follows:

This Order is entered without prejudice to Vimala Agrawal's ability to join in any appeal and re-

assert her claim if permitted to do so by an appellate disposition.

3. After the appeal was assigned to the Tulsa Division of the Court of Civil Appeals, Defendant/Appellee Duke Energy Field Services filed a motion to disqualify one of the division's judges and the matter was later assigned to an Oklahoma City Division of the Court of Civil Appeals.

deposition, on May 12, 2004, Green and Agrawal's counsel submitted a correction sheet for the Green deposition, stating Green had actually installed the Taylor valve to the tank remnant *after* the explosion. Green submitted to another deposition on May 26, 2004, confirming he had installed the valve after the explosion, instead of prior to the accident as he had originally testified, and admitted he had done so to mislead the Defendants, the court, and eventually a jury:

Q: You wanted to hide from the defendants and the jury and this court the fact that you substituted—that you manipulated the evidence after the explosion, didn't you, Mr. Green?

A: Yes.

¶ 5 Appellant, Kris Agrawal, gave his first deposition in the case on January 14, 2004, approximately a month after Green's initial untrue deposition testimony and prior to submission of Green's correction sheet. Agrawal was asked about the valve in his January 2004 deposition as well:

Q: Let me have you refer to DEFS Number 25, which is a picture of a valve that was connected to the vessel on the day that it exploded. Were you involved in any way in connection with the installation of that valve?

A: No.

Q: Do you know who installed it?

A: Nope.

Q: Do you know whether that valve has ever been tested in any way to determine at what pressure it will operate?

A: I don't know.

Q: Do you know who installed the valve?

A: No, I don't.

. . .

Q: And we had talked about this blue valve on DEFS Number 25 that was connected to the tank. Did you notice that valve open up or hear anything from that valve?

A: I do not know that.

Q: Pardon me?

A: I do not know. I don't have any recollection.

Q: Okay. So as we sit here today, you don't recall the blue valve in DEFS Number 25, you don't recall that opening or venting pressure or anything like that?

A: Nope. I was just not there at that point when things happened.

¶ 6 It became apparent after Mr. Green's evidence manipulation came to light in the Spring of 2004 that Agrawal may have found out about Green's improper actions prior to his January 2004 deposition. Agrawal indicated during his June 2006 deposition that he and Green had discussed the matter of Green's post-explosion evidence manipulation in December 2003, after Green's deposition and prior to Agrawal's deposition:

Q: [to Agrawal] This discussion that you were talking about, is that the one that took place in the parking garage of this building after Mr. Green's initial deposition?

A: [Agrawal's response] I think so.

However, Agrawal did not inform Defendants at his own January 2004 deposition of his possible concern about the inaccuracy of Green's December 2003 testimony. The record does not reveal any example in Agrawal's January 2004 deposition wherein he comes forward with regard to Green's dishonesty or at least informed the Defendants that he had reason for concern regarding Green's previous testimony and the possibility the tank was manipulated after the explosion.

¶ 7 Agrawal later denied having known about Green's post-explosion valve installation until after his own deposition, indicating he had mis-spoken or misunderstood when he answered the questions at his 2006 deposition. In an apparent effort to clarify when he found out about the valve installation and explain why no correction of his previous testimony had been made or was necessary, Agrawal submitted the following affidavit on the matter in March 2008:

Kris Agrawal, being of lawful age and first duly sworn, hereby deposes and states as follows:

1. I am one of the Plaintiffs in the captioned cause. I am making this affidavit on the basis of direct personal knowledge.

2. I was severely injured when the pressure vessel exploded on September 16, 2001. I lost my right leg. My left leg was reattached, but rotated inward 30 degrees.

3. I have no direct personal knowledge of when a blue Taylor pressure relief valve was installed on the pressure vessel that exploded. I was not present when the valve was installed.

4. I learned that the valve had been installed *after* the explosion[,] which was confirmed upon investigation on or about March 18, 2004. I told my lawyers, when such information was still a suspect and when the information was confirmed.

5. All of the questions I have answered are in accordance with the Court Ordered deposition pertaining to my knowledge prior to and to the date of the explosion.

(Emphasis in original).[4]

¶ 8 In March 2004, shortly before Green submitted his correction sheet, admitting the valve was installed after the explosion, Defendants became aware there may have been manipulation of evidence after having spoken with one of Green's former co-workers, whom Green had first approached and asked to attach the valve after the explosion. This former co-worker was apparently concerned about the propriety of installing the valve after the accident and refused to do so, upon which Green then installed it himself.

¶ 9 On February 15, 2008, Defendants filed a motion to dismiss the case based upon Plaintiffs' fabrication of evidence and related perjury. Green and his wife dismissed their claims without prejudice prior to the trial court's first order dismissing Kris Agrawal's claim on January 22, 2009.[5] However, Kris and Vimala Agrawal continued to pursue their claims against the above-named Defendants.[6] The trial court conducted a hearing on April 4, 2008, at which time the court made "a factual determination that both Mr. Green and Mr. Agrawal have acted improperly, and pursuant to at least [§ ] 2011, should be sanctioned appropriately." The trial court declined to grant Defendants' motion to dismiss at the April 2008 proceeding, instead holding the matter in "abeyance," for a determination of one of two things: a) a determination that the only issue is that of the tank and that it would have otherwise acted properly, if the valve had been installed prior to the explosion or b) if this determination is not made and the matter proceeds to trial, then the court stated it would conduct a factual hearing to determine monetary sanctions, considering the amount of money the Defendants had to spend "chasing the red herring."

¶ 10 The Defendants filed a renewed motion to dismiss, which the court heard on January 7, 2009. At this second hearing, the court determined Agrawal "failed to take immediate steps to remedy his wrongful conduct, or the conduct that had been (sic) begun in his case-he failed to take any steps to remedy that." The court also determined that Plaintiffs' misconduct "dealt with a material fact ... at the core of the lawsuit" and Agrawal chose to remain silent. The court further noted that Agrawal's claims of misunderstanding, due to his birth outside the U.S., were unsubstantiated and provided no excuse for his behavior, noting Agrawal was "a very educated man" with a doctorate degree, who had been in the U.S. for a number of years. The trial court then stated it had considered monetary sanctions, limitation of Agrawal's claims, and limiting witnesses, but

---

4. The trial court's November 19, 2003 minute order regarding depositions reads as follows:

Hearing set today is continued to 12/17/03 @ 9:30AM. ½ day allowed for hearing. Parties have agreed that depositions be taken prior to hearing on limited issues of configuration and history of configuration of compressor and related equipment including Kimray valve, thru date of explosion.

Because of this order, Agrawal argues he was only ordered to discuss his knowledge through the date of the explosion in his 2004 deposition, so his answers in that deposition are not factually untrue in his opinion, since he did not discover Green's misconduct until after the explosion.

5. William Green's claims were eventually assigned to a bankruptcy trustee and this real party in interest dismissed Green's claims, against all Defendants, without prejudice on April 29, 2008.

6. On April 24, 2008, Kris and Vimala Agrawal dismissed without prejudice their claims against "Practice (sic) Sales and Service only." [Defendant's correct name is "Practical Sales and Service, Inc."]

determined none of these adequately addressed the conduct at issue in this case. The court then sustained Defendants' motion to dismiss. From the order granting Defendants' motion to dismiss, Agrawal filed a motion for new trial and then filed a motion to vacate the order denying the motion for new trial. From the January 2009 order, Agrawal originally appealed; that appeal was dismissed as premature; and in response to the appellate court's directive, Vimala Agrawal's loss of consortium claim was dismissed by the trial court on December 2, 2010. Now that the dismissal of both Kris and Vimala Agrawal's claims are concluded, this appeal stands for review.

¶ 11 "The standard for review of a [trial court's] order granting or denying a petition to vacate is whether the trial court abused its discretion. An abused judicial discretion is manifested when discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence. It is discretion employed on untenable grounds or for untenable reasons, or a discretionary act which is manifestly unreasonable." *Patel v. OMH Medical Center, Inc.,* 1999 OK 33, ¶ 19, 987 P.2d 1185, 1193–94. Likewise, the appellate review standard for a sanction ruling is also an abuse of discretion. *State, ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 2, 61 P.3d 234, 240. For the reasons herein stated, we find the trial court did not abuse its discretion when it declined to vacate the order dismissing Kris and Vimala Agrawal's claims against the above-named Defendants/Appellees.

¶ 12 Appellants' first proposition of error asserts the trial court erred when it denied Agrawal's motion for new trial for being filed out of time. Agrawal's new trial motion was filed on February 5, 2009, following the order granting Defendants' motion to dismiss, which occurred on January 22, 2009.

¶ 13 A new trial motion must be filed "not later than ten (10) days after the judgment, decree or appealable order prepared in conformance with Section 696.3." 12 O.S.2001 § 653(A). It appears from the record, the trial court applied § 696.3 and deemed the motion to vacate due on February 2, 2009, ten days after judgment having fallen on

Sunday February 1, 2009. Appellants argue 12 O.S. Supp.2007 § 2006(A) applies under the current circumstances and the motion to vacate was not due until February 5, 2009, because weekends and intermediate legal holidays are excluded from the computation:

A. COMPUTATION. 1. In computing any period of time prescribed or allowed by this title, by the rules of any court of this state, or by order of a court of this state, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a legal holiday as defined by Section 82.1 of Title 25 of the Oklahoma Statutes or any other day when the office of the court clerk does not remain open for public business until the regularly scheduled closing time, in which event the period runs until the end of the next day which is not a legal holiday or a day when the office of the court clerk does not remain open for public business until the regularly scheduled closing time. Except for the times provided in Sections 765, 990.3, 1148.4, 1148.5, 1148.5A, and 1756 of this title, when the period of time prescribed or allowed is less than eleven (11) days, intermediate legal holidays and any other day when the office of the court clerk does not remain open for public business until the regularly scheduled closing time, shall be excluded from the computation.

12 O.S. Supp.2007 § 2006(A). Appellants argue that the trial court failed to properly apply § 2006 and improperly denied the motion for new trial as a result.

¶ 14 Appellees agreed with Appellants that computation of time under § 653 should have excluded intervening weekends, but Appellees argued the error was harmless and not worthy of reversal, because the underlying dismissal for Agrawal's misconduct was valid, which meant denial of the motion to vacate did not result in a substantial violation of a right to which Agrawal was entitled to relief. *See Hadnot v. Shaw,* 1992 OK 21, 826 P.2d 978, 983 n. 20 (citing 12 O.S. § 78, "The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the sub-

stantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.").

¶ 15 We agree with the parties, the trial court should have applied § 2006 to the computation of time for the filing of Agrawal's new trial motion. However, Appellants must demonstrate this error affected Agrawal's substantial rights, which in this case requires examination of the propriety of the underlying dismissal. As a result, no relief may be had on this error alone, absent a showing the dismissal itself was improperly granted.

■ ¶ 16 Appellants' second proposition claims the trial court erred granting sanctions under 12 O.S. § 2011, because Defendants/Appellees failed to comply with the statute's "safe harbor" provision.[7] Appellees responded, claiming the court did not grant the dismissal based on § 2011, but on the court's inherent authority to safeguard the integrity of the judicial process itself and therefore did not need to comply with § 2011. *Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944), *overruled on other grounds, Standard Oil Co. v. United States*, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976).

¶ 17 For its part, the trial court's dismissal order does not refer to either inherent authority or § 2011, the order reads in part as follows, "After consideration of the parties' evidence, argument and authorities, the court finds that the Motion should be granted and claims asserted in this lawsuit should be dismissed with prejudice for the reasons set forth by the Court during the January 7, 2009 hearing, which are hereby incorporated by reference." Likewise, during the January 7, 2009 hearing, the court did not refer specifically to its authority under either § 2011 or inherent authority as the support for its decision to dismiss Agrawal's suit. The court noted its primary concern was that Agrawal did nothing immediately upon learning of Green's conduct. The court was critical of Agrawal's failure to correct his own testimony, commenting that Agrawal waited until 2008 to file the affidavit. For his part, Agrawal pointed out that Green's 2004 correction

7. 12 O.S.2001 § 2011:

C. SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subsection B of this section has been violated, the court shall, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subsection B of this section or are responsible for the violation.
1. HOW INITIATED.
a. By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subsection B of this section. It shall be served as provided in Section 2005 of this title, but shall not be filed with or presented to the court unless, within twenty-one (21) days after service of the motion or such other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorneys fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.
b. On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subsection B of this section and directing an attorney, law firm, or party to show cause why it has not violated subsection B of this section with respect thereto.
2. NATURE OF SANCTIONS; LIMITATIONS. A sanction imposed for violation of this section shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs a, b and c of this paragraph, the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys fees and other expenses incurred as a direct result of the violation.
a. Monetary sanctions shall not be awarded against a represented party for a violation of paragraph 2 of subsection B of this section.
b. Monetary sanctions shall not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.
c. Monetary sanctions shall be awarded for any violations of paragraph 1 of subsection B of this section. The sanctions shall consist of an order directing payment of reasonable costs, including attorney fees, incurred by the movant with respect to the conduct for which the sanctions are imposed. In addition, the court may impose any other sanctions authorized by this paragraph.

halted any possibility that Defendants continued to labor under the initially false understanding the valve had been installed prior to the explosion. However, the trial court found Agrawal had a responsibility to immediately inform Defendants of the evidence manipulation and take affirmative action of his own to correct the situation, which he failed to do, and to correct his testimony, which he also failed to do, not to simply rely on Green's correction and second deposition. It is unclear from the trial court's order and statements made from the bench at hearing whether § 2011 or inherent authority was the basis of the court's decision.

¶ 18 However, with respect to § 2011, Appellees essentially concede § 2011 sanctions did not provide the basis for their motion or the court's ruling. In addition, the record does not demonstrate that sanctions were ordered under the auspices of § 2011. For this reason, we find no relief is warranted upon this proposition of error, as compliance with § 2011(C)(1)(a) would not be relevant.

¶ 19 It is under the trial court's inherent authority to sanction and safeguard the integrity of the judicial process that Appellees contend the court had the power to impose this severe sanction on Plaintiffs/Appellants. However, Appellants argue dismissal of this case is not consistent with prior Oklahoma law. Appellants specifically seek to distinguish *Lenzy v. State*, 1993 OK CR 53, 864 P.2d 847, *State ex rel. Tal v. City of Oklahoma City*, 2002 OK 97, 61 P.3d 234, and *Winters v. City of Oklahoma City*, 1987 OK 63, 740 P.2d 724. Appellants argue *Lenzy* is a criminal case and is not relevant to this appeal, *Tal* found the trial court could not sanction the taxpayers under its inherent authority and *Winters* involved sanctions upon the party's attorney, not the party itself. Therefore, Appellants argue none of these cases applies in this appeal.

¶ 20 However, it should be noted that Oklahoma law recognizes the court's authority to impose sanctions under the auspices of the court's inherent authority. *See Barnett v. Simmons*, 2008 OK 100, ¶ 14, 197 P.3d 12, 18; *Bentley v. Hickory Coal*, 1992 OK CIV APP 68, 849 P.2d 417, 420. And dismissal is a sanction available to the court in the most

egregious circumstances, where intentional conduct, willfulness or bad faith warrant severe sanctions. *Barnett*, 197 P.3d at 21. As a result, contra to Appellants' proposition that the trial court's dismissal was not in keeping with Oklahoma law, Oklahoma law does provide a mechanism, via the court's inherent authority, to sanction a party for abuse of the judicial process or abusive litigation practices. *Barnett*, 197 P.3d at 18; *Bentley*, 849 P.2d at 420. Therefore, the question is whether Agrawal's conduct abused the judicial process or rose to the level of abusive litigation practices. The trial court found Agrawal's conduct amounted to complicity in perjury, combined with a prolonged failure to correct the wrongful conduct, despite an obligation to do so. Such conduct is abusive litigation practice and an abuse of the judicial process. Therefore, we find that under these facts and circumstances, the trial court did not abuse its discretion in dismissing the action, based on its inherent authority to protect the judicial process.

■ ¶ 21 Appellants' third proposition of error contends Appellants' due process rights were violated when the case was dismissed and no subsequent relief was granted from that dismissal. Appellants claim this violated their fundamental right to be heard, thus violating their due process. *Societe Intern'l Pour Participations Indust. Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958) ("These decisions establish that there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause."); *see also Simms v. Hobbs*, 1966 OK 5, 411 P.2d 503, 510.

¶ 22 Appellants contend the court did not consider six factors outlined in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920–21 (10th Cir. 1992) to determine if dismissal was justified: a) actual prejudice caused to the opposing party; b) the amount of interference with the judicial process that was caused by Appellants' conduct; c) the litigant's culpability with regard to the alleged conduct; d) whether the litigant was warned that non-

compliance would likely give rise to dismissal as a sanction; e) the efficacy of lesser sanctions; and f) the meritoriousness of the litigant's claims.[8]

¶ 23 Appellees insist that dismissal requires only that Agrawal's improper conduct be intentional, willful or done in bad faith and a recitation of the *Ehrenhaus* factors is unnecessary. *See Barnett,* 197 P.3d at 21. However, at the same time, Appellees argue each of the *Ehrenhaus* factors was met in this particular case.

¶ 24 In *Ehrenhaus,* the 10th Circuit Court of Appeals determined that dismissal was such a serious sanction that "a court should ordinarily consider a number of factors" before imposing dismissal as a sanction for a litigant's conduct. Oklahoma courts have also found dismissal to be a very serious or severe sanction and have considered *Ehrenhaus*-like factors in the process of determining the propriety of dismissal as a sanction. *Barnett,* 197 P.3d at 21 ("Factors that should be considered prior to choosing the most severe sanctions include the following: willfulness, prejudice, whether there was a warning that failure to cooperate could lead to dismissal, whether less drastic sanctions were imposed or considered, and the amount of interference with judicial process.").

¶ 25 The first factor Appellants ask us to consider is actual prejudice, for which Agrawal insists there was none. Agrawal claims that because both he and Green submitted to additional depositions and because Green corrected his first deposition in 2004, no prejudice has been realized by Defendants/Appellees. Agrawal's argument loses sight of the fact that Defendants labored from 2001 to 2004 under the impression that the valve was installed prior to the accident. They conducted depositions, employed experts, performed tests and prepared for their defense based upon this false premise, so that Appellees claim prejudice due to all these red herring litigation preparations, each of which would need to be reevaluated and possibly redone. Defendants/Appellees have been prejudiced as a result.

¶ 26 Second, Agrawal insists there is no evidence he interfered with the judicial process. This too is not accurate. Agrawal testified in his second (2006) deposition that he learned of Green's perjury during a conversation following Green's December 2003 deposition and prior to his own January 2004 deposition. Though Agrawal later claimed he was mistaken about the timing of this event, there is nonetheless evidence he knew about Green's conduct before his own deposition. His ambiguous affidavit only muddies the picture regarding when he learned of Green's activities and when he chose to inform his counsel and/or opposing parties. The trial court was also very disappointed and concerned that Agrawal made no attempts himself to correct his January 2004 testimony until at least his 2006 deposition and did not provide an affidavit until 2008.

¶ 27 The third factor Agrawal wants us to consider is his culpability. Agrawal repeatedly stands on his position that he did not alter the valve and is therefore not culpable. Agrawal's brief states, "Agrawal learned of the error in Green's initial deposition after the case below was filed and after Green's initial deposition." This statement, even if true in every respect, does not absolve Agrawal of culpability, given his statements that he learned of the valve installation prior to his own deposition and did not inform the parties of Green's activities when he was under oath in 2004. Again, regardless of when Agrawal learned of Green's misconduct, even if it was after Agrawal's January 2004 deposition, the court was extremely critical of Agrawal's failure to supplement discovery, doing so only after considerable time had passed, because the misconduct had bearing upon a material issue in the case.

¶ 28 Agrawal argues vehemently that he was not warned that dismissal could be a sanction for his failure to comply. This factor does not really apply in this case. It is intended to inform parties that their failure to comply with a court order, often a discovery request, will result in sanctions, possibly

---

**8.** The meritoriousness of a plaintiff's underlying claim is not a factor listed in *Ehrenhaus,* 965 F.2d at 921.

dismissal. *Ehrenhaus*, 965 F.2d at 921. In this case, Green's conduct and Agrawal's subsequent complicity with or failure to properly address that misconduct was not something for which the court could offer a warning; the misconduct and its consequences had already occurred and been in progress for years before the court was even aware.

¶ 29 The fifth factor asks the court to consider the efficacy of lesser sanctions. This the trial court clearly did, as evidenced in the court's comments at the January 7, 2009 hearing. The court made a point to mention it had considered monetary sanctions, limiting witnesses, and limiting claims, but could find no sanction that would appropriately deal with the misconduct that had arisen and contaminated every aspect of this case. The pervasive effect of the misconduct was obviously foremost in the court's reasoning and Agrawal has not shown this to be an abuse of discretion.

¶ 30 Finally, Agrawal has asked we consider the meritoriousness of his claim. This is not actually a factor listed in *Ehrenhaus*, but as Agrawal has raised it, we will consider the argument here. Agrawal was injured in the accident at issue. It does not appear that any of the Defendants deny he lost his leg and injured the other leg. But even so, Agrawal either engaged in perjury himself or was less than forthright about his knowledge of his co-plaintiff's perjury and misdeeds.

■ ¶ 31 In contrast, the *Ehrenhaus* court dismissed the complaint after the plaintiff failed to appear for a scheduled deposition. Agrawal's case involves perjury, standing by in the face of perjury, and failing to rectify his own previous incorrect statements for years after his deposition. Regardless of his initial injury, the court has the right and duty to impose sanctions for abusive litigation practices or abuse of the judicial process. *Barnett*, 197 P.3d at 18. Where aggravating factors outweigh the court's strong predisposition to resolve cases on the merits, dismissal is an appropriate sanction. *Ehrenhaus*, 965 F.2d at 921. This is a very fact specific inquiry that is best made by the trial court. *Barnett*, 197 P.3d at 21. We do not find the trial court abused its discretion in determining that Plaintiffs, including Agrawal, abused

the judicial process and in doing so lost the right to pursue what might have otherwise been a meritorious claim.

■ ¶ 32 Appellants' fourth proposition of error argues the trial court erred by laboring under a misunderstanding regarding the timing and duration of Agrawal's failures to reveal Green's misconduct and perjury. Agrawal argues the court's sanction is unnecessarily severe, because the court incorrectly understood Agrawal took no corrective measures until 2008. However, the record does not support Appellants' argument. The record is clear that the trial court was aware of Green's May 2004 correction. However, the record also revealed the trial court was not inclined to give Agrawal credit for Green's correction and clearly believed Agrawal had his own corrections to make, which were not made until much later, when Agrawal submitted to a second deposition in 2006 and provided the affidavit in 2008. When the court said Agrawal "failed to take any steps to remedy" his own wrongful conduct or that of his co-plaintiff, the court was speaking to more than simply the post-explosion valve evidence tampering. The court's criticisms of Agrawal's conduct at the January 2009 hearing go to the fact that the court believed Agrawal owed Defendants an understanding of when he became aware of Green's conduct and what steps he took to correct the damage Green had done. In this respect, the court was correct in its evaluation of the evidence, because the record does not show Agrawal himself did anything to correct until his second deposition in 2006 and his 2008 affidavit, efforts the court viewed as too little and too late.

¶ 33 Again, the task of evaluating the parties' conduct to determine the most appropriate sanction is a very fact specific one, best made by the trial court. *Barnett*, 197 P.3d at 21. The record does not reveal the trial court misunderstood the delayed nature of Agrawal's corrective measures, as Agrawal alleges. We find no relief is warranted upon this proposition of error.

■ ¶ 34 Appellants' fifth proposition of error alleges that the post-explosion valve manipulation is not relevant to Agrawal's

claims against Defendants, because Agrawal has procured expert opinion testimony that installation (or lack of installation) of the pressure relief valve was not a factor in the explosion. The trial court found that Green's deception and Agrawal's complicity "dealt with a material fact."

¶ 35 The record reveals that Green, Agrawal's co-plaintiff, believed the valve to be somehow material to the suit or he would not have altered the evidence after the explosion to install the valve and then lie about it in his December 2003 deposition. Agrawal himself, when recounting the conversation in which he learned Green added the valve after the accident, said he viewed the revelation as significant. The record makes clear that the valve and Green's manipulation of the evidence does not simply become irrelevant because Agrawal now has an expert that says it did not bring about the explosion. The trial court's evaluation of the valve and the corresponding manipulation of that evidence as material is supported by this record. We do not find the trial court abused its discretion in making this determination based upon the facts available. *Barnett,* 197 P.3d at 21.

¶ 36 Appellants next argue the district court lacked jurisdiction to deny Agrawal's motion to reconsider. Agrawal's case was dismissed on January 22, 2009; his motion for new trial was filed February 5, 2009; the motion for new trial was denied on February 11, 2009; Agrawal filed a motion to vacate the denial of his motion for new trial on February 18, 2009; on July 30, 2009, the trial court issued an order denying the motion for new trial, which stated the court considered both the merits of the dismissal as well as the court's out of time computation. Agrawal had filed his petition in error in the appellate court on February 20, 2009, prior to the court's ruling on Agrawal's February 18, 2009 motion.

¶ 37 Appellants cite the general rule that the district court is without jurisdiction to make an order materially affecting the rights of the parties while an appeal is pending, and therefore, the trial court's July 30, 2009 order is void. *See Daniel v. Daniel,* 2001 OK 117, ¶ 11, 42 P.3d 863, 867. Appellants have failed to articulate how exactly the July 30,

2009 order "materially affect[s] the rights of the parties to [the] appeal." *Daniel v. Daniel,* 42 P.3d at 867. Both the order of dismissal (January 22, 2009) and the order denying the motion for new trial (February 11, 2009) were filed prior to Appellants' petition in error on appeal. Even if the July 2009 district court order is void, Appellants' cause was still dismissed and exists in the same posture as it would have had the July order preceded the petition in error; there is nothing about the July 2009 order "materially affecting" Agrawal's appeal.

¶ 38 Agrawal seems to argue that it is only in the July 2009 order that the district court explained its position that both merits and computation of time were reviewed with respect to the February 11, 2009 order denying the motion for new trial. However, this clarification does not make the July 2009 order material. If the denial of the new trial motion was ordered due to the court's incorrect assumptions of the computation of time, that order need not be disturbed if the decision itself was correct. It has long been held that a correct decision based upon erroneous reasoning will not be disturbed simply due to the erroneous reasoning. *Jones v. Anderson,* 1947 OK 79, 198 Okla. 304, 178 P.2d 78, 80. Appellants must demonstrate the order itself is wrong. Even assuming the trial court ordered the denial of the motion for new trial upon the faulty reasoning of time computation, an allegation the court itself denies, Appellants have failed to demonstrate any relief is warranted upon this proposed error.

¶ 39 Appellants final proposition of error argues the district court lacked authority to deny Appellants' motion to reconsider the denial of the motion for new trial. When the district court denied the motion to reconsider the denial of the new trial motion, the court stated, "given the matters under appeal, the Court is not convinced it has the authority to amend the order previously entered by the Court." Appellants have failed to indicate what relief they seek and what relief could be granted upon this proposition of error. Given the fact both the dismissal and order denying Plaintiffs' motion for new trial were decided prior to the filing of Plaintiffs/Appellants'

appeal, we find no relief is warranted with respect to the disposition of the July 2009 order, as it does not appear to materially affect the rights of the parties on appeal. *Daniel,* 42 P.3d at 867.

¶ 40 For the reasons herein stated, the order of the district court is AFFIRMED.

BUETTNER, P.J., and BELL, J., concur.