Robert F. NEESE and Johnnye
Neese, Appellants,

v.

SHAWNEE MEDICAL CENTER HOSPITAL, INC., a corporation; T.A. Balan; Shawnee Medical Center Clinic, Inc., a corporation; Zimmer-Hoffman Associates, a domestic corporation; and Zimmer U.S.A., Inc., a corporation, Appellees.

No. 60270.

Supreme Court of Oklahoma.

Sept. 23, 1986.

As Corrected on Denial of
Rehearing Feb. 2, 1987.

Howard K. Berry, Jr., Berry & Berry, P.C., Oklahoma City, for appellants,

Robert H. Gilliland, Jr., McAfee & Taft, Calvin W. Hendrickson, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for appellees.

SUMMERS, Justice.

In 1974 appellant Robert F. Neese suffered a back injury while unloading a sofa from a truck. He was hospitalized and elected to have back surgery by Dr. Balan at the Shawnee Medical Center Hospital. During the surgery the tip of a stainless steel surgical forceps, a pituitary rongeur, broke off in the patient's spinal area. Dr. Balan and his assisting surgeons were unable to retrieve the tip and it remains embedded in Mr. Neese's back. Suit was brought by Mr. Neese and his wife for damages. Named as defendants were the hospital, the surgeon, the clinic with which the surgeon was associated, and the corporations involved in the manufacture of the instrument. In October, 1976, trial commenced and demurrers to plaintiffs' evidence were sustained by the trial court. On appeal this court reversed, finding the evidence sufficient to have gone to the jury.[1]

A second trial was had on remand in January, 1983. At the conclusion of plaintiffs' evidence demurrers were sustained as to defendants Zimmer-Hoffman Associates and Zimmer-Hoffman U.S.A., Inc., manufacturers of the pituitary rongeur. The

---

**1.** See *Neese v. Shawnee Medical Center Hospital, Inc.,* 626 P.2d 1327 (Okl.1981).

demurrer as to the remaining defendants was overruled. The jury found for Mr. Neese against appellee Shawnee Hospital Authority d/b/a Shawnee Medical Center Hospital, and awarded him $7,500.00. Johnnye Neese, however, was awarded nothing for her alleged loss of consortium. The Neeses appealed to the Court of Appeals from an order overruling a motion for partial new trial on the issue of damages, claiming both awards were reversibly inadequate. The Court of Appeals, Division No. 4, reversed as to damages, holding that Robert should have been given more and Johnnye should have been given something, and granted a partial new trial on the issues of damages against the Shawnee Medical Center Hospital.[2] In all other respects the judgment was affirmed. We have previously granted certiorari.

## WERE THE DAMAGES AWARDED BY THE JURY INADEQUATE AS A MATTER OF LAW?

■ This question is the only one presented by plaintiffs on appeal. The issue is not whether under Oklahoma law a new trial may be granted on the issues of inadequate damages, but whether under the circumstances of this case the damages awarded by the jury were inadequate as a matter of law, thereby necessitating a new trial. Unless inadequate as a matter of law, the jury verdict must stand. With respect to this we have said:

"In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal."[3]

The evidence presented in the trial of this case was conflicting as to the damages sustained by the Neeses. We have further held:

"On appeal it matters not that we might or might not have reached a different conclusion as to the amount of damages suffered by reason of injuries received. Nor that we might or might not feel that the evidence adduced would have sustained a larger verdict. The only question as to the evidence presented is, is there any competent evidence to sustain the verdict."[4]

The only medical witness called by the Neeses was William Shaw, a psychologist. His testimony was based on psychological examinations he performed on Mr. Neese in 1982. Dr. Shaw found Mr. Neese to be severely depressed as a result of this surgical incident. The essence of Dr. Shaw's testimony is as follows:

"Mr. Neese reported to me that during the surgery in 1974 there had been an accident where one of the surgical instruments had broken and he reported that he believed it to be lodged in his back at this point and he reported the sequence of events of contact with physicians since that time which had led him to be extremely concerned about not only the

2. The Court of Appeals reversed in part for inadequacy of instructions. We note that the instructions given were substantially as requested by plaintiffs, that no objections thereto were made during trial, and that no error with respect thereto was alleged on appeal. Under these circumstances an appellate court reviews instructions only to determine if they are free from fundamental error. *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583 (Okl.1981); *Rogers v. Worthan*, 465 P.2d 431 (Okl.1970); *Burke v. Scott*, 361 P.2d 272 (Okl.1961).

The instructions were taken almost verbatim from the recommended "Oklahoma Jury Instructions-Civil", approved by this court in an order of January 1, 1983, some ten days before the trial commenced. The instructions given

are an accurate reflection of Oklahoma law. As a whole, the instructions make clear that the jury's duty is to award such damages as will fairly compensate plaintiffs for injuries sustained as a result of the hospital's negligence, if any. A review of the instructions shows no fundamental error.

3. *Metropolitan Life Insurance Co. v. Golden*, 180 Okl. 164, 68 P.2d 516, 518 (1937); citing *National Lumber and Mfg. Co. v. Elred*, 186 P. 470 (Okl.1919).

4. *Battles v. Janzen*, 325 P.2d 444 (Okl.1958). Quoted with approval in *Vickers v. Ittner*, 418 P.2d 700 (Okl.1966).

location and presence of that particular piece of instrument but the potential danger that it posed to him in the future. He reported to me that he was informed by a physician that he should not do any strenuous activity, push, pull, etcetra, lift, bend, that maybe the activities which he used to enjoy involving physical motion might now be life threatening to him. Whether that is real or not, Mr. Neese was very impressed by that, very frightened by that, and it appeared that on the basis of his report and on the basis of the report of other individuals this was a pivotal point in his life. At that point things began to, it appears, emotionally fall apart for him. He began to feel more depressed, less competent, inadequate, and it appears to me that the unfortunate incident in 1974 and subsequent events were the pivotal points in the presence of the depression which Mr. Neese appears to be enduring at this point in time." (Tr. P. 310, 311)

According to the testimony of Dr. Shaw, he was unaware that Mr. Neese also suffered from osteoarthritis.

The defendant's medical testimony consisted primarily of Dr. Marvin Margo and Dr. Henry Freede. Dr. Margo, a physician who treated Mr. Neese, testified that in his opinion the piece of metal in his back was not causing Mr. Neese's disability:

"I do not feel that this metal object is causing any pain or discomfort or any disability to him or his back. It is not—the instrument in all these x-rays six and seven years after the x-ray I took has not changed. The only thing that has changed is that his arthritis and his degenerative disc disease has worsened, as I could have predicted then, and all symptoms he has can be directly related to that and not caused by the instrument." (Tr. P. 433)

"But, because of where this broken piece is, there is no nerves there, there is no vessels, there is nothing there that can hurt." (Tr. P. 449)

Dr. Freede, an orthopedic surgeon who had also examined Mr. Neese, testified that the piece of metal in Mr. Neese's back was not now causing or contributing to any of his complaints or any of his medical problems and that it will not in the future. He stated that the piece was about one and one-half to two inches from the defendant's aorta, three or four inches from the spinal cord, and one-half inch from the nearest nerve. He testified further that the piece had not moved or migrated in any way in the past nine years. Dr. Freede also stated that in his opinion that progressive arthritis was the major cause of Mr. Neese's complaints.

With respect to Mr. Neese's psychiatric disturbance manifested by depression, etc., the only psychiatrist to testify was Dr. Moorman Prosser, Mr. Neese's own witness in the first trial in 1976 and called by the defendants in the second trial. He stated that upon examining Mr. Neese for his alleged depression and psychiatric disturbance subsequent to the surgery done by Dr. Balan, no mention whatsoever was made by the plaintiff of the fact that he was carrying a piece of metal in his back. Dr. Prosser concluded that the metal was of no significance in creating whatever problems the plaintiff might have had psychologically.

Mrs. Neese's testimony with respect to her cause of action for loss of consortium centered around the fact that Mr. Neese had been a very robust, healthy, muscular man prior to the time of the surgery and had helped out on the heavy activities around the house like moving the furniture and other things that "men do around the house to help out".

Now, however, her complaint is that Mr. Neese lies on the divan watching television and doesn't want to do anything or go anywhere. He doesn't want to go out to eat, and he doesn't care to participate in family activities like he did prior to the surgery. Although finding in favor of the plaintiffs generally the jury gave her zero dollars on her cause of action for loss of consortium.

12 O.S. 1981 § 651(4) authorizes the vacation of a verdict and the granting of a

new trial on the grounds of excessive or inadequate damages that appear to have been assessed under the influence of passion or prejudice. In *Dodson v. Henderson Properties, Inc.*[5] the trial court set aside a jury verdict for the plaintiff as excessive. The general rules and principles available to a trial court in deciding whether to set aside a jury verdict as excessive also apply on appeal in considering whether to set aside a jury verdict as inadequate. We summarized these cardinal principles as follows:

> "A trial judge may not sit as a thirteenth juror. It matters not that the trial court or this court might or might not have reached a different conclusion as to the amount of damages suffered by reason of the injuries received. The court may not substitute its judgment for that of the jury and the exercise of its function as a fact finding body. In so doing, the trial court in this case abused its discretion. Were a trial court permitted on unbridled prerogative to substitute its opinion for that of a jury, it would be tantamount to a partial abrogation of the right to trial by jury. The order setting aside jury verdict granting a new trial is reversed. Jury verdict reinstated."[6]

We also stated in *Park v. Security Bank and Trust Co.*:[7]

> "It is the function of a jury to properly evaluate the various elements of alleged damages. It was in a position to see the plaintiff and the witnesses and in a better position to evaluate the damages than this Court on appeal.... After considering the above evidence we conclude that the damages awarded to plaintiff were not so inadequate as to strike mankind at first blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice or corruption."

Just as it was the function of the jury to lawfully compensate Mr. Neese for his injuries caused by the defendant it was also for the jury to also consider whether Mrs. Neese had suffered a compensable loss of consortium as a result of the forceps incident. A recovery for the injured plaintiff does not of itself necessarily require an award of damages for the spouse alleging loss of consortium.[8] The jurors had before them facts showing a man who had suffered severe physical disabilities prior to surgery and showed marked improvement following the surgery, a man who three years later had unrelated open heart surgery, who had degenerative arthritic disc disease and who following the original surgery made no complaint of the rongeur bit in his back to his psychiatrist during the examination for an alleged condition of depression. The jurors heard the evidence and observed the parties and witnesses, and they, under the laws of this state were duty bound to decide what, if anything, the damages were. We do not find the damages to be inadequate as matter of law, but rather find that the verdict was supported by competent evidence. See: Park v. Security Bank, supra.

Certiorari having already been granted, the opinion of the Court of Appeals is vacated and judgment of the trial court based on the jury verdict therein is reinstated.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, OPALA, and ALMA WILSON, JJ., concur.

KAUGER, J., concurs in part, dissents in part.

---

**5.** 708 P.2d 1064 (1985).

**6.** *Id.* at 1068.

**7.** 512 P.2d 113, 117 (Okl.1973).

**8.** *Walker v. St. Louis San Francisco Ry.*, 646 P.2d 593, (Okl.1982); *Hinkle v. Hampton*, 495 P.2d 117, (Okl.1972).