OSCN Found Document:HICKS v. CENTRAL OKLAHOMA UNITED METHODIST RETIREMENT FACILITY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 HICKS v. CENTRAL OKLAHOMA UNITED METHODIST RETIREMENT FACILITY
2017 OK CIV APP 23
Case Number: 113117; (Cons. w/113652)
Decided: 09/21/2016
Mandate Issued: 05/11/2017
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2017 OK CIV APP 23, __ P.3d __

 

WILLIAM HICKS, individually, and as Guardian ad Litem for VIRGINIA HICKS, an incapacitated person, Plaintiff/Appellee,
v.
CENTRAL OKLAHOMA UNITED METHODIST RETIREMENT FACILITY, INC. d/b/a EPWORTH VILLA HEALTH SERVICES, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA

HONORABLE PATRICIA G. PARRISH, JUDGE

AFFIRMED IN PART; REVERSED IN PART;
REMANDED WITH INSTRUCTIONS

Melissa S. Hedrick, Oklahoma City, Oklahoma, and Kirk Olson, Oklahoma City, Oklahoma, and Joe E. White, Jr., Charles C. Weddle, III, White & Weddle, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee,
Charles D. Neal, Stacie L. Hixon, Clark W. Crapster, Gary C. Crapster, Steidley & Neal, P.L.L.C., Tulsa, Oklahoma, and Graydon Dean Luthey, Jr., Gable Gotwals, Tulsa, Oklahoma, for Defendant/Appellant.

Bay Mitchell, Judge:

¶1 Defendant/Appellant Central Oklahoma United Methodist Retirement Facility, Inc. d/b/a Epworth Villa Health Services ("Epworth Villa" or "Defendant") appeals several of the trial court's rulings in this personal injury suit brought by Plaintiff/Appellee William Hicks ("Mr. Hicks" or "Plaintiff") in his personal capacity and as guardian ad litem for his wife, Virginia Hicks ("Mrs. Hicks"). Mr. and Mrs. Hicks were residents at Epworth Villa's Oklahoma City facility when Mrs. Hicks suffered a broken wrist while under the care of Epworth Villa in its specialized, memory care unit. Mr. Hicks filed suit against Epworth Villa for breach of contract, negligence, and intentional infliction of emotional distress ("IIED") seeking both actual and punitive damages. On appeal Epworth Villa argues the trial court erred when it entered default judgment on Plaintiff's breach of contract and negligence claims as a sanction for failure to comply with discovery orders. Epworth Villa also argues the trial court erred by ordering additional sanctions in the form of default judgment on Plaintiff's claim for punitive damages and by eliminating Epworth Villa's right to jury trial on the IIED claim. Further, Epworth Villa asserts the trial court erred in allowing the IIED claim to be tried and that the actual and punitive damages awarded by the court were excessive and not supported by the evidence. Additionally, Epworth Villa objects to the trial court's award of attorney fees and costs to Mr. Hicks, which was appealed separately from the underlying judgment and consolidated with this appeal by order of the Supreme Court.

I. DISCOVERY SANCTIONS

A. Default Judgment on Breach of Contract and Negligence Claims

¶2 We first address the trial court's entry of default judgment on Plaintiff's negligence and breach of contract claims as a discovery sanction. Title 12 O.S. §3237 Failure to Make or Cooperate in Discovery - Sanctions, provides, in part:

B. FAILURE TO COMPLY WITH ORDER

2. SANCTION BY COURT IN WHICH ACTION IS PENDING. If a party or an officer, director or managing agent of a party or a person designated under paragraph 6 of subsection C of Section 3230 or subsection A of Section 3231 of this title to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subsection A of this section or Section 3235 of this title, or if a party fails to obey an order entered under subsection F of Section 3226 of this title, the court in which the action is pending may make such orders in regard to the failure as are just. Such orders may include the following:

c. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party, . . . .

¶3 When a trial court sanctions a party for disobeying discovery orders by default judgment, that sanction is reviewed by this court for an abuse of discretion. Payne v. DeWitt, 1999 OK 93, ¶9, 995 P.2d 1088. "To reverse for abuse of discretion, we must determine the trial court made a clearly erroneous conclusion and judgment, against reason and evidence. Although we examine and weigh any proof in the record, we abide the presumption that the lower court decision on the sanction question is legally correct and cannot be disturbed unless it is contrary to the weight of the evidence or to a governing principle of law." Garnett v. Government Employees Insurance Co., 2008 OK 43, ¶14, 186 P.3d 935 (examining sanctions imposed pursuant to 12 O.S. §2011) (footnotes omitted). See also Lee v. Max Intern., LLC, 638 F.3d 1318, 1320 (10th Cir. 2011).[1] When imposing the sanction of default judgment, the trial court should make a fact-specific inquiry considering the following factors: "(1) the quantum of prejudice noncompliance has caused the adversary (or moving) party, (2) the extent of interference with the judicial process, (3) culpability of the litigant, (4) whether the court warned the party in advance that noncompliance could lead to dismissal or default judgment, and (5) the efficacy of lesser sanctions." Payne, 1999 OK 94, ¶¶8-9. The penalty of default judgment "should be applied only when a party's failure to comply with a discovery order is occasioned by fault, willfulness, or bad faith." Id. at ¶9. "Where aggravating factors outweigh the court's strong predisposition to resolve cases on the merits, dismissal is an appropriate sanction." Agrawal v. Duke Energy Field Servs., LP, 2013 OK CIV APP 61, ¶31, 307 P.3d 371.

¶4 Mr. Hicks filed suit October 28, 2011. On April 13, 2012 Mr. Hicks served his first set of discovery requests on Epworth Villa, including interrogatories, requests for production of documents, and requests for admissions. Mr. Hicks filed a Motion to Compel June 19, 2013 requesting the trial court order Epworth Villa to produce documents requested pursuant to the Discovery Code, 12 O.S. §§ 3224, et seq. In the Motion to Compel, Mr. Hicks represented to the trial court that, despite at least one formal discovery conference, several email and phone conversations between the parties, and the parties' agreement about what would be produced, Epworth Villa had not produced the requested documents. Epworth Villa denied that an agreement had been reached about what documents would be produced, but following a hearing held July 26, 2013, the trial court sustained Mr. Hicks' Motion to Compel, in part, ordering Epworth Villa to produce certain documents by August 30, 2013 and to provide a privilege log if necessary.[2] A written order memorializing the trial court's ruling was filed September 25, 2013. Although there was some disagreement between the parties about the scope of Mr. Hicks' requests and whether some of the documents actually existed, it was largely undisputed the documents requested by Mr. Hicks were discoverable.

¶5 On October 18, 2013, having not received any documents, Mr. Hicks filed a Motion to Enforce the trial court's order compelling discovery. The trial court then held five subsequent hearings on December 16, 2013; December 30, 2013; January 2, 2014; January 17, 2014; and January 30, 2014 regarding Epworth Villa's production of documents. At each of these hearings Epworth Villa denied that it had certain documents within its control or possession, represented to the trial court that it was unaware of the existence of additional responsive documents, and had produced all documents responsive to Mr. Hicks' requests. Despite these representations, Epworth Villa later produced additional responsive documents when faced with the imposition of sanctions or as a result of deposition testimony from its current and former employees revealing the existence of such documents. Mr. Hicks filed his Motion for Sanctions February 25, 2014 and requested that the trial court enter judgment as to liability on all of his claims (i.e. negligence, breach of contract, and IIED).[3] Following the April 18, 2014 hearing, the trial court sanctioned Epworth Villa by entering default judgment on Mr. Hicks' negligence and breach of contract claims relying on 12 O.S. §3237, Payne v. DeWitt, 1999 OK 93, 995 P.2d 1088, and Hotels, Inc. v. Kamper Corp., 1998 OK CIV APP 93, 964 P.2d 933.

¶6 As described by the trial court in its written order filed May 12, 2014 entering default judgment on the negligence and breach of contract claims and as confirmed by review of the appellate record, examples of the most egregious conduct include:[4]

Despite being requested in Mr. Hicks' first discovery requests, Epworth Villa failed to produce until January 3, 2014 additional complaints and investigations of physical abuse, emotional abuse, neglect, and/or bedsores contained within two banker's boxes, consisting of thousands of pages of incident reports, which were tabbed, labeled, and separated within 3-ring binders or folders and categorized by incident year. This production occurred only after the trial court threatened the sanction of allowing certain reports into evidence at trial if the documents were not produced by 5:00 p.m. on January 3, 2014. The documents were originally requested in April 2012.

Epworth Villa failed to produce until January 8, 2014, a document referred to as the "Hicks Investigation File" maintained by Lois Baer, the Director of Nursing ("DON") at the time of Mrs. Hicks' injury on May 9, 2010. Production of the Hicks Investigation File revealed that Epworth Villa had the document within its possession and control since May 2010. The file was located in the same filing cabinet drawer where DON Baer had left it nearly 4 years earlier. Strikingly, each subsequent DON, including Epworth Villa's current DON, utilized the same office and filing cabinets where the file had been located for the previous 4 years. Epworth Villa's production of the file coincided with and was the result of DON Baer's anticipated deposition testimony on January 9, 2014 that said file existed and its location. Mr. Hicks requested the production of all investigation files in April 2012.

Epworth Villa failed to produce until January 21, 2014, the complete personnel files as requested by Mr. Hicks in April 2012. This production was only the result of DON Baer's deposition testimony that many documents were not present within her personnel file that she would have expected followed by the trial court's order that Mr. Hicks' counsel be allowed to inspect and copy the personnel files at Epworth Villa's facility where they discovered the complete files. The production revealed hundreds of pages of additional documents pertaining to, among other things, performance appraisals, written reprimands, commendations, and emails concerning employee behavior.

Epworth Villa failed to produce until March 26, 2014 incident logs and resident complaint forms which were required to be maintained by state licensing authorities. The production occurred after the deposition of Andrea Morgan, Epworth Villa's current DON, where she testified about the existence of such records. Mr. Hicks requested the production of these documents in April 2012.

Epworth Villa did not produce, until April 3, 2014, documents pertaining to employee training which included 2,916 pages of documents despite such documents being requested in the first discovery requests in April 2012. On April 14, 2014 Epworth Villa then produced additional training materials including videos and an additional 416 pages of documents. This production came after Mr. Hicks' counsel had deposed Epworth Villa's designated witnesses with regard to training practices and 4 days before the hearing on the Motion for Sanctions held April 18, 2014.

Epworth Villa produced additional documents specifically related to the care of Mrs. Hicks the night before the April 18, 2014 sanctions hearing, including a privilege log listing 900 pages of additional documents within its possession and control. All documents related to Mrs. Hicks' care were first requested in April 2012.

At the time these documents were produced, trial in the matter was scheduled for May 19, 2014.

¶7 In its ruling, the trial court made findings as to each of the five factors set forth in Payne. As to the "quantum of prejudice" the noncompliance caused the moving party, the trial court stated the delayed discovery prevented Plaintiff from preparing for trial, necessitating trial delays, which were especially problematic considering the failing health and advanced age of Mr. and Mrs. Hicks, both of whom were in their nineties. Mrs. Hicks also suffered from advanced Alzheimer's disease. Epworth Villa argued that two earlier trial delays were obtained by agreement of the parties, but Mr. Hicks' counsel made a specific argument at the April 18 sanctions motion hearing that he was now faced with the choice of reviewing all these late-produced documents or preparing for trial, thus substantiating the trial court's findings. Mr. Hicks' counsel also emphasized that another trial delay was not a possibility because of the failing health of Mr. Hicks, who was set to testify at trial. Additionally, the trial court noted Plaintiff was prejudiced by having to focus more on obtaining discovery than on preparing its case for trial. The trial court also found that the trial delays and multiple discovery hearings required by Epworth Villa's conduct interfered with the judicial process. The trial court made a specific finding of Epworth Villa's culpability, stating, "[Epworth Villa's] culpability is clearly established through its conduct, which indicates [it] unmistakably engaged in a pattern of discovery abuses, to include failing to provide truthful information regarding discovery, non-production of documents, and/or production of documents only in the face of serious sanctions and/or as a result of testimony from [its] employees. . . ." The trial court had previously warned Epworth Villa of sanctions, including the possibility of default judgment, and had already imposed a lesser sanction in the form of ordering Epworth Villa to cover the cost for Plaintiff to redepose one of Epworth Villa's employees where documents had been produced after the deposition. Despite this earlier sanction and continued threat of sanctions, Epworth Villa continued in its practice of delaying and obstructing Plaintiff's right to discovery.

¶8 When reviewing the record before us through the lens of the abuse-of-discretion standard, we cannot say the trial court erred. The trial court and Plaintiff were required to go through a protracted, complicated process to ensure the production of documents which should have been produced by Epworth Villa in a timely and orderly fashion. See Lee v. Max Intern., LLC, 638 F.3d 1318 (10th Cir. 2011) (upholding the trial court's dismissal of plaintiff's case when plaintiff disobeyed two orders compelling production of discovery materials in its possession, custody, or control).[5] Despite numerous hearings on the matter, the threat of sanctions, and the imposition of a lesser sanction, Epworth Villa continued to delay and obstruct the production of these documents without reason. See, id. at 1320-21 ("[T]hree strikes is more than enough to allow the [trial] court to call a litigant out. [A] party's thrice repeated failure to produce materials that have always been and remain within its control is strong evidence of willfulness and bad faith.").

¶9 On appeal, Epworth Villa argues that not all of the factors set forth in Payne were satisfied to a sufficient degree to support the imposition of this "death penalty" sanction and that lesser sanctions, such as monetary sanctions, ameliorating evidentiary rulings, or jury instructions, should have been imposed instead. We reject these propositions of error. At the outset we see no requirement that the Payne factors meet some certain quantum of proof so long as the trial court considers each of the factors and evidence of fault, willfulness, or bad faith is present. Payne, 1999 OK 94, ¶9; Erenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992) (relied on by the Oklahoma Supreme Court in Payne to establish the factors to be considered by the trial court when imposing discovery sanctions).[6] Importantly, the trial court evaluated, on the record, Epworth Villa's conduct as to each of the five Payne factors and concluded each factor weighed in favor of default judgment. See ¶7, supra. The trial court seemed especially concerned about the late production of documents after Epworth Villa had repeatedly said on the record that no such documents existed, such as the Hicks Investigation File, and its refusal to change its conduct or discovery practices after having sanctions threatened and actually imposed. Epworth Villa's repeated failure to cooperate in discovery constitutes "strong evidence of willfulness and bad faith. . . to warrant. . . default judgment." Lee, 638 F.3d at 1321. See also Payne, 1999 OK 94, ¶10 (entry of default judgment warranted where defendant refused to appear at multiple noticed depositions and court-ordered depositions over a five-month period). The record supports the trial court's factual conclusions regarding Epworth Villa's conduct and its decision to enter default judgment on the breach of contract and negligence claims.

B. Default Judgment in Liability for Category I Punitive Damages
and Removal of Jury Trial for IIED Claim

¶10 Next, we turn to the additional sanctions entered by the trial court where it entered judgment against Epworth Villa as to liability for Category I punitive damages and removed Epworth Villa's right to jury trial on the remaining claims (IIED and damages).[7] Here, a review of the facts leading up to these sanctions is necessary before determining under what authority the trial court entered these sanctions.

1. Sanctions entered May 16, 2014 - Default judgment on Category I punitive damages

¶11 Following the entry of default judgment on the breach of contract and negligence claims, Epworth Villa fired its counsel, obtained new counsel, (collectively referred to herein as "new counsel") and filed a Motion to Vacate the Default Judgment on May 6, 2014.[8] In its Motion to Vacate, as supplemented by affidavits from Epworth Villa employees and oral argument and testimony at the hearing held May 12, 2014, Epworth Villa argued its prior counsel failed to provide it with any update or status of the litigation and also failed to provide it notice of the trial court's repeated threat of sanctions, including default judgment.[9] To support these assertions, Epworth Villa brought to the hearing redacted copies of all written communications, including emails, between it and its prior counsel which dealt with discovery and sanctions issues from the start of the case through April 18, 2014. Epworth Villa redacted any references to case strategy. Epworth Villa intended for the trial court to review the communications in camera and decide which, if any, of the communications Plaintiff's counsel should have access to present a response to the Motion to Vacate. Following a break in the hearing where the trial court reviewed the documents in camera, the trial court ordered Epworth Villa to produce the redacted documents to Plaintiff. Epworth Villa had represented to the trial court and Plaintiff's counsel that the documents constituted all of the communications related to discovery and sanctions issues between it and its prior law firm.

¶12 Following the production of the communications and as the hearing continued, Epworth Villa's Chief Operating Officer Lauren Cantu testified she was the primary point of contact for prior counsel and that such communication was mostly handled through oral communication. Ms. Cantu stated she was responsible for getting prior counsel in contact with the employees who were best able to respond to the various categories of Plaintiff's discovery requests. Ms. Cantu testified she did not maintain a file for the litigation and had never seen such a file but assumed it was maintained by Epworth Villa's Chief Financial Officer Tina Ballard. Ms. Cantu also testified prior counsel did not make her aware of any discovery issues that had been ongoing since at least the first hearing on Plaintiff's Motion to Compel was held July 26, 2013. When asked about email exchanges with prior counsel where he wrote "serious sanctions" were a possibility and that he "couldn't save [them]," Ms. Cantu stated she did not understand those to mean that default judgment was a possibility. Ms. Cantu also stated prior counsel did not inform her of Plaintiff's Motion for Sanctions where Plaintiff requested that the trial court enter default judgment as to liability on all claims. She testified that the first time she was aware of the possibility of default judgment was when she attended the April 18, 2014 hearing where default judgment was entered on Plaintiff's negligence and breach of contract claims.

¶13 However, cross-examination revealed Ms. Cantu had signed verifications authenticating several of Epworth Villa's supplemental discovery responses, thus indicating she was aware of the discovery issues. Additionally, Ms. Cantu was shown an email where Plaintiff's counsel was inadvertently blind copied. Ms. Cantu received this email, which was sent by staff at Conner and Winters the day before the April 18 sanctions hearing, and transmitted additional supplemental discovery responses. This evidence and testimony placed additional doubt on Ms. Cantu's earlier testimony that she was not kept aware of the discovery and sanctions issues. Notably, this email was available to Plaintiff only because counsel had been blind copied and had never been produced by Epworth Villa. Epworth Villa was unable to explain how a forensic computer search of its computer systems did not reveal this document such that it could be properly produced to Plaintiff or why the email was not among those reviewed by the trial court and ultimately produced to Plaintiff at the hearing.

¶14 Epworth Villa's Chief Executive Officer John Harned also testified at the May 12 hearing. He stated that, although he was present at the April 18, 2014 hearing, he was in attendance only because his prior counsel told him it was advisable for him to be there but that he was not informed why his presence was requested. He was also unaware that he had the ability to testify at the hearing. Mr. Harned asserted that, at no point prior to the April 18 hearing, did he understand that default judgment was a possibility or even what default judgment meant. Mr. Harned further claimed that the first time he became aware of the possibility of default judgment and the implications for the litigation of this case came after the trial court entered default judgment and his prior counsel explained to him what it meant following the April 18 hearing. At the close of the hearing, the trial court announced it would take Epworth Villa's Motion to Vacate under advisement and provide a ruling shortly.

¶15 On May 13, 2014, the day after the hearing on Epworth Villa's Motion to Vacate, Epworth Villa's new counsel provided an email to the trial court which was sent from Conner and Winters on March 13, 2014 to Ms. Cantu, Ms. Morgan, Director of Nursing, and and an additional Epworth Villa employee, Lisa Pever. Attached to the March 13, 2014 email was a memo providing annotations to an earlier memo, which had as its subject line "Analysis of Allegations in Motions for Sanctions; Updated following meeting with L. Pever and A. Morgan." Following receipt of this email and in consideration of the evidence presented at the May 12, 2014 hearing, the trial court denied Epworth Villa's Motion to Vacate and informed the parties it would consider any renewed sanctions requests by Plaintiff at the May 16, 2014 pre-trial conference.

¶16 At the May 16, 2014 hearing, Plaintiff renewed its request for an instruction to the jury that Epworth Villa had violated court orders regarding the production of documents and that such direct disobedience could be considered in the jury's determination of punitive damages.[10] Plaintiff then made an oral motion for the trial court to enter default judgment as to liability on Category I punitive damages because of the false testimony of Epworth Villa's employees at the May 12, 2014 hearing and the subsequent production of documents showing the falsity of the testimony when such documents were produced after the assurances of Epworth Villa's counsel that all communications between Epworth Villa and its prior counsel had already been produced. Plaintiff also stated its intention to seek additional sanctions should more documents be produced in such a fashion.

¶17 An attorney representing Conner and Winters in Epworth Villa's professional malpractice claim against it, Andrew Bowman, provided additional evidence that the memo and email produced May 13, 2014 had been in the possession of Epworth Villa's current counsel since at least April 29, 2014 but was still not produced. Clearly frustrated with the conduct of Epworth Villa and its counsel in the presentation of the Motion to Vacate and the subsequent document production, the trial court entered default judgment as to Category I punitive damages against Epworth Villa. The trial court also ordered the jury to be instructed as requested by Plaintiff.

¶18 Additionally, because Mr. Bowman's evidence showed there may have been yet more documents on the issue of Epworth Villa's knowledge of the discovery and sanctions issues which were available to Epworth Villa's counsel but not produced, the trial court ordered Epworth Villa to produce to the trial court for in camera review all communications between it and Conner and Winters which had not yet been produced along with all communications between Mr. Bowman's firm and Steven Holden, Epworth Villa's current counsel (the "May 16, 2014 production order"). The May 16, 2014 production order was for all communications between those parties and was not limited to communications just dealing with the discovery and sanctions issues. The trial court set the production deadline for May 19, 2014 for its in camera review.

2. Sanctions entered May 20, 2016 - No right to jury trial on IIED claim

¶19 Plaintiff filed his trial brief on May 19, 2014, hand-delivered a file-stamped copy to the trial court, and sent a copy to Epworth Villa's counsel via email. In this brief, Plaintiff stated he would seek additional sanctions, including a request that the trial court order a bench trial on damages and all other remaining claims, in the event additional documents were produced by Epworth Villa as a result of the May 16, 2014 production order. On May 20, 2014, the first day of trial scheduled in the matter, the trial court reported back to all the parties that Epworth Villa had produced an additional 400 pages of documents in response to the May 16, 2014 production order. Of particular concern to the trial court were two documents related specifically to Ms. Cantu and Mr. Harned's knowledge of the potential sanctions, including a two-page letter signed by Mr. Harned in which Epworth Villa's former general counsel, who was also a member of the Conner and Winters firm, explained the potential conflict of interest between client and attorney caused by Plaintiff's Motion for Sanctions and Epworth Villa's options to defend against such motion. These documents had not been previously produced to the trial court as ordered for its review of documents related to Epworth Villa's Motion to Vacate.

¶20 As a result of this additional production and because of concerns that Epworth Villa (through both its current counsel and testifying employees) would not be truthful with the jury, the Plaintiff made an oral motion for the additional sanction of dismissing the jury and ordering the remaining issues (damages and IIED liability) to be tried to the court. The trial court granted this motion after asking Epworth Villa for a response and a suggestion of a lesser sanction. Epworth Villa responded that the ordering of sanctions was within the trial court's discretion.

3. Analysis

¶21 On appeal Epworth Villa argues the court erred in the imposition of these last two sanctions in various ways. First, it argues the sanctions were not entered as discovery sanctions but, rather, as sanctions for what the trial court interpreted to be untruthful testimony during the hearing on Epworth Villa's Motion to Vacate. Thus, Epworth Villa argues, the trial court exceeded its authority in entering those sanctions. Second, Epworth Villa argues the trial court erred by removing its right to jury trial because the dictates of due process were not followed. Finally, Epworth Villa argues the removal of the right to jury trial must be reviewed de novo because it involves a constitutional right.

¶22 The trial court relied on 12 O.S. §3237(B) and Payne v. DeWitt, 1999 OK 93 in its written order memorializing the sanctions. The filing of a motion to compel followed by failure to obey the resulting order is a prerequisite for sanctions to be imposed under §3237(B). Barnett v. Simmons, 2008 OK 100, ¶14, 197 P.3d 12. However, in addition to the authority to enter sanctions pursuant to §3237, "[a] trial court has inherent authority to impose sanctions . . . for abusive litigation practices or for abuse of judicial process, even if an order compelling discovery has not been made." Barnett, 2008 OK 100, ¶14. Whether the trial court entered sanctions for Epworth Villa's dishonesty in the filing and arguing of its Motion to Vacate or whether the sanctions were entered for Epworth Villa's inability to properly produce the documents related to the Motion to Vacate is immaterial. Both were properly sanctionable by the trial court. We will not reverse this decision to enter sanctions simply because the trial court relied on its authority under 12 O.S. §3237, rather than on its inherent authority to control the courtroom. "It is well settled that a correct judgment will not be disturbed on review, even when the trial court applied an incorrect theory or reasoning in arriving at its conclusion; an unsuccessful party cannot complain of [a] trial court's error when he would not have been entitled to succeed anyway." Harvey v. City of Okla. City, 2005 OK 20, ¶12, 111 P.3d 239.

¶23 The standard of review for a sanction ruling is abuse of discretion. Garnett, 2008 OK 43, ¶14. Other than arguing the trial court did not have the authority to enter these sanctions, Epworth Villa offers no other challenge that the trial court abused its discretion. In any event, our review of the record demonstrates no abuse of discretion. Epworth Villa filed a Motion to Vacate based on its position that its prior counsel did not properly keep it apprised of the discovery issues and the possibility of sanctions. When ordered to produce documents brought to issue by this motion, Epworth Villa produced documents which demonstrated it was not truthful with the trial court in the filing and presentation of this motion. Further, this production was made after Epworth Villa represented to the trial court on at least two separate occasions that it had already produced all such documents. Given this continued practice of withholding documents, which started with behavior resulting in the first set of discovery sanctions, and its dishonesty with the trial court, we cannot say the trial court abused its discretion in entering these sanctions.

¶24 As to our review of the removal of the right to jury trial, we reject any contention that we must review the sanction under a heightened de novo standard. Oklahoma jurisprudence makes clear that sanctions are reviewed under an abuse of discretion standard. E.g. Garnett, 2008 OK 43, ¶14. The cases relied on by Epworth Villa in support of the higher standard of review are inapplicable here.[11] We similarly reject Epworth Villa's arguments that the entry of default judgment on Category I punitive damages and the removal of its right to jury trial violated any due process in this case.[12] Epworth Villa had been on notice since at least February 25, 2014 that sanctions were a possibility for continued noncompliance with court orders, including the "death penalty" sanction of default judgment on liability.

¶25 Additionally, following the hearing on the Motion to Vacate and subsequent document production, the trial court informed Epworth Villa at least two more times on the record that it would consider additional sanctions for Epworth Villa's litigation conduct, and Plaintiff specifically requested in its trial brief that Epworth Villa's right to jury trial be removed. Epworth Villa's claims it did not have notice of the possibility of sanctions are without merit. Although Plaintiff's trial brief was filed just the day before the trial court heard argument on the matter, this constituted adequate notice considering the history of this litigation. Further, when asked to respond to Plaintiff's request to remove the right to jury trial, including suggestions of lesser sanctions, Epworth Villa responded that the issuing of sanctions was within the trial court's discretion. The trial court appropriately exercised this discretion and removed Epworth Villa's right to jury trial on the remaining claims (i.e. the amount of damages and IIED).[13] This decision of the trial court is AFFIRMED.

II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

¶26 Next, Epworth Villa contends there was insufficient evidence at the bench trial on the IIED claim upon which to base a determination of liability on Epworth Villa. In Oklahoma the tort of intentional infliction of emotional distress, also known as the tort of "outrage," is governed by the standards of the Restatement (Second) of Torts §46.[14] Schovanec v. Archdiocese of Okla. City, 2008 OK 70, ¶47, 188 P.3d 158. "The tort requires evidence of extreme and outrageous conduct coupled with severe emotional distress." Id. To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. Id. The circumstances surrounding the conduct affect whether the conduct is reasonable. Eddy v. Brown, 1986 OK 3, ¶7, 715 P.2d 74.

¶27 Additionally, the trial court performs a gatekeeping function by making a threshold legal determination that the defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous to meet the standards set forth in the Restatement. Breeden v. League Services Corp., 1978 OK 27, ¶12, 575 P.2d 1374. The claim may be submitted to the jury (or fact finder) only if reasonable persons could differ on whether the defendant's conduct was sufficiently outrageous. Id.; Restatement (Second) of Torts §46, cmt. h. The trial court must also make an initial determination whether severe emotional distress can be found, and, if so, the jury (or fact finder) determines whether such distress in fact existed. Breeden, 1978 OK 27, ¶12; Restatement (Second) of Torts §46, cmt. h.

¶28 Because there was no jury trial on this claim, the trial court acted as both judge and jury. Accordingly, "the [trial] court made both the initial legal determination of outrageousness and severe distress as well as the ultimate findings of injury and liability." Estate of Trentadue v. U.S., 560 F.Supp.2d 1124, 1127 (W.D.Okla. 2008) (IIED claim under Oklahoma law tried to the bench). We review the trial court's threshold legal determination under a de novo standard. Durham v. McDonald's Restaurants of Okla., Inc., 2011 OK 45, ¶9, 256 P.3d 64.[15]

¶29 Plaintiff's IIED claim was based on two theories; first, that Epworth Villa failed to adequately and properly investigate the incident which resulted in Mrs. Hicks' injury and tried to place the blame on sitters hired by Mr. Hicks causing Mr. Hicks severe emotional distress; and second, that Epworth Villa intentionally or recklessly allowed the employee who injured Mrs. Hicks to return to work and possibly provide care to her and that Mr. Hicks observed the employee on the same floor as Mrs. Hicks' room, which caused him severe emotional distress. Plaintiff's argument emphasized that this conduct occurred in the setting of a nursing home where Mr. Hicks was under the control of Epworth Villa. To move past the threshold showing, Plaintiff must show that Epworth Villa's conduct was "beyond all possible bounds of decency" or "utterly intolerable in a civilized society." Eddy, 1986 OK 3, ¶7. Nothing short of "[e]xtraordinary transgressions of the bounds of civility" will give rise to liability for intentional infliction of emotional distress. Merrick v. N. Natural Gas Co., 911 F.2d 426, 432 (10th Cir. 1990) (applying Oklahoma law); Eddy, 1986 OK 3, n. 6.

¶30 Although there is evidence that Epworth Villa did not follow its own investigation procedures, we conclude that such behavior was not sufficient to lead "an average member of the community. . . to exclaim '[o]utrageous!'." Restatement (Second) of Torts §46 cmt. d. See also Miner v. Mid-America Door Co., 2003 OK CIV APP 32, ¶¶42-43, 68 P.3d 212 (finding that an employer's response and investigation into allegations of hostile work environment, even if untimely and unreasonable, were insufficient as a matter of law to give rise to claim for IIED). Similarly, evidence that the employee allegedly responsible for Mrs. Hicks' injury returned to work on the same floor as Mrs. Hicks' room was not sufficient to create a question for the fact finder on the issue of outrageousness. The evidence showed that Mr. Hicks may have seen someone who he thought resembled the employee but that he was not sure and had to be told who she was. Such an encounter cannot give rise to a claim for IIED. The trial court erred in determining that Epworth Villa was liable for this claim and is reversed accordingly.

III. ACTUAL DAMAGES

¶31 The trial court awarded Plaintiff $181,513.00 on the breach of contract claim; $1,505,212.64 plus prejudgment interest on the negligence claim; and $3,500,000.00 plus prejudgment interest on Mr. Hicks' IIED claim. Because we find Epworth Villa's conduct failed to give rise to a claim for IIED, as a matter of law, the award of damages in the amount of $3,500,000.00 for emotional distress suffered by Mr. Hicks is necessarily reversed.

¶32 On appeal, Epworth Villa also charges that the damages awarded for Plaintiff's breach of contract and negligence claims were excessive. We will sustain the amount of damages awarded if supported by any competent evidence. E.g. Neese v. Shawnee Med. Center Hosp., Inc., 1986 OK 63, ¶4, 733 P.2d 383. This is true whether the damages are awarded by a jury or the bench. Darrow v. Spencer, 1978 OK 107, ¶12, 581 P.2d 1309. We will not set aside a judgment unless the record demonstrates the trial court was "actuated by passion, partiality or prejudice." Magnolia Petroleum Co. v. Agnelly, 1955 OK 361, ¶28, 306 P.2d 309.

¶33 The record shows that Mrs. Hicks suffered a wrist fracture that did not require surgery. However, the record also demonstrates, through expert testimony, that Mrs. Hicks was an especially sensitive plaintiff who suffered from Alzheimer's disease and who experienced a significant cognitive decline following her injury. Other than providing conclusory statements that such an injury does not warrant the amount of damages awarded, Epworth Villa provides no legal or factual support for its position. Similarly, although Epworth Villa peppered its brief with oblique references to the trial court's supposed prejudice against it, especially comments which were made in reference to Epworth Villa's litigation conduct, we do not find any indication that the trial court's actual damages award for Epworth Villa's negligence was influenced by passion or prejudice.[16] The amount of damages awarded by the trial court for negligence and breach of contract is AFFIRMED.

IV. PUNITIVE DAMAGES

¶34 Following a bench trial, the trial court found clear and convincing evidence that Epworth Villa "acted intentionally and with malice toward others" for purposes of Category II punitive damages and awarded a total amount of $10,000,000.00 in punitive damages, an amount which was roughly twice the amount of actual damages awarded on Plaintiff's negligence and IIED claims.[17] On appeal, Epworth Villa argues the amount is not supported by the evidence in light of its financial status as a non-profit entity and because it bears no relationship to any injury actually suffered by Plaintiff.

¶35 The trial court entered default judgment as to liability against Epworth Villa for Category I punitive damages.[18] However, no Category I punitive damages were specifically awarded. As discussed above in section B(1) of this opinion, that judgment is affirmed. After the bench trial, the trial court also made a finding that Epworth Villa's conduct gave rise to Category II punitive damages and awarded $10,000,000.00 in total punitive damages, but did not allocate any specific amount of the award to the negligence or IIED claim. Given the reversal of the IIED judgment and the corresponding reduction of actual damages, the award of punitive damages is accordingly reversed and remanded to the trial court. On remand, a hearing must be held to determine the category and amount of punitive damages, if any, arising from the negligence claim. The trial court must also consider the financial condition of Epworth Villa when making its award of punitive damages pursuant to 23 O.S. §9.1(A)(7).

V. ATTORNEY FEES

¶36 Following a post-trial motion, the trial court awarded Plaintiff $650,043.00 in attorney fees. The trial court awarded Plaintiff attorney fees for the negligence and breach of contract claims by incorporating Epworth Villa's Resident Handbook into Mrs. Hicks' Admission Agreement, the contractual agreement between Mrs. Hicks and Epworth Villa for her care. The trial court also awarded Plaintiff attorney fees for the IIED claim based on Epworth Villa's failure to admit certain Requests for Admission related to the IIED claim pursuant to 12 O.S. §3237(D). On appeal, Epworth Villa argues the Resident Handbook should not be incorporated into Mrs. Hicks' Admission Agreement to provide a contractual basis for recovery of attorney fees. Epworth Villa also argues the trial court erred in awarding attorney fees for its failure to admit Requests for Admission related to Plaintiff's IIED claim.

¶37 Generally, an attorney fee is recoverable by a prevailing party only where authorized by statute or an enforceable contract. Ashikian v. State ex rel. Oklahoma Horse Racing Comm'n, 2008 OK 64, ¶17, 188 P.3d 148. The question of whether a party is entitled to attorney fees is a legal question, which we review de novo. See Elmore v. Doenges Bros. Ford, Inc., 2001 OK CIV APP 27, ¶6, 21 P.3d 65, 69.

¶38 Mrs. Hicks entered into an Admission Agreement in March 2007 for Epworth Villa's licensed Continuum of Care Facility. Mrs. Hicks was also given a Resident Handbook which enumerated a list of Residents Rights and Responsibilities, including the right to receive appropriate medical care and to be free of abuse. The Resident Handbook also included the following provision:

[A]n action may be brought against an individual by a Resident who is injured by any violation of this section, or who shall suffer injury from any person whose threats would cause a violation of this section if carried through, may maintain an action to prevent, restrain or enjoin a violation of this section shall be established in any action, the court shall enjoin or restrain or otherwise prohibit the violation or threatened violation and assess in favor of plaintiff and against the defendant the cost of the suit and the reasonable attorneys fees incurred by the plaintiff. If damages are alleged and proved in the action, the plaintiff shall be entitled to recover from the defendant the actual damages sustained by the plaintiff. (Emphasis added.)

Plaintiff argued the injuries to Mrs. Hicks triggered this provision and that attorney fees were recoverable pursuant to Section 663-13-1(b) of Title 310 of the Oklahoma Administrative Code ("OAC"), which provides that each assisted living center must furnish all residents with a complete contract and that all assurances made in marketing materials are deemed incorporated into that contract.[19] Epworth Villa argued Mrs. Hicks was housed in its "continuum of care facility" and that OAC 310:663-13-1(b) only applies to "assisted living centers" and not "continuum of care" facilities such that the Resident Handbook could not be incorporated into Mrs. Hicks' Admission Agreement.[20]

¶39 Regardless of whether Epworth Villa is a "continuum of care facility" or an "assisted living center" such that the Resident Handbook provision at issue was incorporated into the parties' contract pursuant to OAC 310:63-13-1(b), the provision itself plainly states that a resident may bring an action against "an individual" and that attorney fees will be awarded to the successful plaintiff against the defendant. While the Resident Handbook does not define "individual," other provisions of the Resident Handbook refer to the "Facility" thus making a distinction between Epworth Villa, as an entity, and individuals. Applying general principles of contract construction, we hold that the Resident Handbook's differentiation between the "Facility" and "an individual" was intentional.[21] Accordingly, this provision cannot support an award of attorney fees against Epworth Villa, the entity.

¶40 Additionally, we reverse the award of attorney fees on the IIED claim based on 12 O.S. 3237(D). The statute provides:

D. EXPENSES ON FAILURE TO ADMIT. If a party fails to admit the genuineness of any document or the truth of any matter as requested under Section 3236 of this title, and if the party requesting the admission thereafter proves the genuineness of the document or the truth of the matter, the party may apply to the court for an order requiring the other party to pay him or her the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that:

1. The request was held objectionable pursuant to [12 O.S. §3236(C)]; or

2. The admission sought was of no substantial importance; or

3. The party failing to admit had reasonable ground to believe that he or she might prevail on the matter; or

4. There was other good reason for the failure to admit.

"The vital force behind the admissions procedure is its sanction. A litigant who improperly refuses to admit a matter may be required to pay the costs incurred by the other party, including attorney fees, in proving the substance of the admission sought. The sanction is designed to compensate the requesting party for the unnecessary expense of proving the matter and to deter misconduct." Meadows v. Wal-Mart Stores, Inc., 2001 OK 25, ¶7, 21 P.3d 48.

¶41 The trial court order awarding attorney fees stated that, as to the IIED claim, "Plaintiff's entitlement to attorney fees is based on 12 O.S. §3237(D) and [Epworth Villa's] failure to admit 11 admissions that were later established at trial." In the Motion for Attorney Fees and Costs presented at trial, Plaintiff listed 17 Requests for Admission. Precisely which 11 of these 17 requests that supported the IIED attorney fee award were not identified. However, our review of the record revealed that, in typical fashion, Plaintiff's Requests for Admission essentially asked Epworth Villa to admit liability on all of its claims. Understandably, Epworth Villa denied such requests where appropriate, or stated that it did not have the information sufficient to admit or deny, thus resulting in a denial by default. On appeal, Epworth Villa argues that it had "reasonable grounds on which to believe that [it] might prevail on the matter" consistent with 12 O.S. §3237(D)(3).

¶42 "[T]he true test under [§3237(D)(3)] is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." Meadows v. Wal-Mart Stores, Inc., 2001 OK 25, ¶12, 21 P.3d 48 (citing Advisory Comm. Notes to 1970 amendments to Fed.R.Civ.P. 37(c)).[22] To the extent the trial court awarded attorney fees simply because the fact sought to be established in a Request for Admission, which was denied, was later proven by the requesting party, such award was made in error. Further, following our review of the record, we conclude that Epworth Villa was reasonable in its denial of Plaintiff's Requests for Admission. The attorney fee award is REVERSED.

¶43 For the reasons set forth herein, the judgment of the trial court is AFFIRMED IN PART; REVERSED IN PART; and REMANDED WITH INSTRUCTIONS for further proceedings consistent with this opinion.

BUETTNER, V.C.J., P.J., and GOREE, J., concur.

FOOTNOTES

[1] "We view challenges to a district court's discovery sanctions order with a gimlet eye. [Trial] courts enjoy very broad discretion to use sanctions where necessary to insure that lawyers and parties fulfill their high duty to insure the expeditious and sound management of the preparation of cases for trial. The [United States] Supreme Court has echoed this message, admonishing courts of appeals to beware the 'natural tendency' of reviewing courts, far from the fray, to draw from fresh springs of patience and forgiveness, and instead to remember that it is the district court judge who must administer (and endure) the discovery process.... The district court's active participation in the discovery motions practice affords it a superior position than we--with but a cold record to review--for deciding what sanction best fits the discovery 'crime,' both as a matter of justice in the individual case and 'to deter others who might be tempted to similar conduct....' Our district court colleagues live and breathe these problems; they have a strong situation sense about what is and isn't acceptable conduct; by contrast, we encounter these issues rarely and then only from a distance." (Internal quotations and citations omitted).

[2] The portion of the Motion to Compel which was denied was based on Epworth Villa's representation that it did not have any additional documents within its control or possession which were responsive to Mr. Hicks' requests for production of any surveillance videos, including still images, on the day Mrs. Hicks' injury occurred.

[3] Mr. Hicks also requested as sanctions that the trial court admit into evidence at trial certain reports from Adult Protective Services related to other instances of abuse at Epworth Villa not involving Mrs. Hicks, give the jury an instruction about Epworth Villa's discovery misconduct, and require Epworth Villa to pay for the cost of a forensic examination of its own computers to recover certain documents and for Plaintiff's attorney fees and costs related to the sanction motion.

[4] The trial court included a meticulous description of each category of additional responsive documents produced following the 5 discovery hearings and/or deposition testimony, but for the sake of brevity, we have highlighted only the most troublesome conduct.

[5] Because 12 O.S. §3237(B) "parallels precisely the terms of Fed.R.Civ.P. 37 in describing the range of sanctions a court is permitted to employ... federal jurisprudence is instructive." Payne, 1999 OK 94, n. 6.

[6] "Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.... These factors do not constitute a rigid test; rather, they represent criteria for the [trial] court to consider prior to imposing dismissal as a sanction. The court should ordinarily evaluate these factors on the record." Erenhaus, 965 F.2d at 921 (internal citations and quotations omitted) (emphasis added).

[7] Oklahoma law provides that "[i]n an action for the breach of an obligation not arising from contract" punitive damages may be awarded in addition to actual damages. 23 O.S. §9.1(A). "Category I" punitive damages may be awarded "[w]here the jury finds by clear and convincing evidence that the defendant has been guilty of reckless disregard for the rights of others.... [The jury] may award punitive damages in an amount not to exceed the greater of (a) One Hundred Thousand Dollars ($100,000), or (b) the amount of the actual damages awarded." Id. at §9.1(B).

[8] Epworth Villa listed the trial court's refusal to vacate the default judgment as one of the points of error on appeal in its petition in error. However, Epworth Villa did not argue this charge in its appellate brief and instead argued the trial court erred in its initial ruling entering default judgment. Because Epworth Villa did not argue this separate point of error, we deem it waived. Supreme Court Rule 1.11(k)(1). In any event, the standard of review for a trial court's grant or denial of a motion to vacate is also abuse of discretion. Patel v. OMH Medical Center, Inc., 1999 OK 33, ¶20, 987 P.2d 1185.

[9] Epworth Villa was represented by several lawyers of the firm Conner and Winters from the time the lawsuit was filed until it retained new counsel and filed the Motion to Vacate. We refer to the lawyers at Conner and Winters collectively as "prior counsel" as Epworth Villa made clear it placed the blame for lack of communication and notice regarding the discovery and sanctions issues on the firm as a whole.

[10] This jury instruction was originally requested in Plaintiff's February 25, 2014 Motion for Sanctions.

[11] Epworth Villa relied on In re H.M.W., 2013 OK 44, ¶13, 304 P.3d 738 to support this higher standard of review. In re H.M.W. dealt with a parent's right to a jury trial in a parental rights termination case.

[12] A trial court is authorized to make a default declaration for the imposition of punitive damages as a §3237(B)(2) sanction. Payne v DeWitt, 1999 OK 93, ¶12, 995 P.2d 1088, 1095.

[13] The removal of the right to jury trial on a specific claim is a lesser sanction than default judgment. Even without a jury, Epworth Villa had the right to present a defense to Plaintiff's IIED claim, a right it would not have in the event the trial court had simply entered default judgment.

[14] The Restatement provides:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
(b) to any other person who is present at the time, if such distress results in bodily harm.

[15] In the event the facts support submitting the claim to the fact finder, the trial court's ultimate finding of liability would not be disturbed if it was supported by any competent evidence reasonably tending to support the verdict. Hagen v. Independent School Dist. No. I-004, 2007 OK 19, ¶7, 157 P.3d 738.

[16] Before the bench trial, Epworth Villa requested that the trial judge recuse. The trial court refused, and the presiding district judge similarly refused to order recusal. Epworth Villa listed this failure to recuse as an allegation of error in its petition in error but failed to include this contention in its appellate brief. Accordingly, any error predicated on the trial court's refusal to recuse has been waived. Supreme Court Rule 1.11(k)(1).

[17] In an action for the breach of an obligation not arising from contract, Category II punitive damages may be awarded in an amount not to exceed the greater of $500,000 or twice the amount of actual damages if it is found "by clear and convincing evidence that the defendant has acted intentionally and with malice toward others...." 23 O.S. §9.1(C).

[18] In an action for the breach of an obligation not arising from contract, Category I punitive damages may be awarded in an amount not to exceed the greater of $100,000 or the amount of actual damages if it is found "by clear and convincing evidence that the defendant has acted in reckless disregard for the rights of others..." 23 O.S. §9.1(B).

[19] OAC 310:633-13-1 states in pertinent part:

(a) Each assisted living center shall furnish to each resident a complete and understandable copy of the resident service contract.

(b) All rights, privileges and assurances guaranteed to residents under these rules or marketing materials are deemed incorporated in any contract between an assisted living center and a resident.

[20] The administrative code provides separate definitions for "assisted living center" and "continuum of care facility" as follows:

"Assisted living center" means any home or establishment offering, coordinating or providing services to two (2) or more persons who:

(A) are domiciled therein;
(B) are unrelated to the operator;
(C) by choice or functional impairments, need assistance with personal care or nursing supervision;
(D) may need intermittent or unscheduled nursing care;
(E) may need medication assistance; and
(F) may need assistance with transfer and/or ambulation; Intermittent nursing care and home health aide services may be provided in an assisted living facility by a home health agency [63:1-890.2(1)].

"Continuum of care facility" means a home, establishment or institution providing nursing facility services as defined in Section 1-1902 of Title 63 of the Oklahoma Statutes and one or both of the following:

(A) assisted living center services as defined in the Continuum of Care and Assisted Living Act; and
(B) adult day care center services as defined in Section 1-872 of Title 63 of the Oklahoma Statutes [63:1-890.2.4].

[21] "If the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated. The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to resolve. Contractual intent is determined from the entire agreement. If a contract is complete in itself and viewed in its entirety is unambiguous, its language is the only legitimate evidence of what the parties intended. The Court will not create an ambiguity by using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on the provision." Whitehorse v. Johnson, 2007 OK 11, ¶14, 156 P.3d 41 (footnotes omitted).

[22] 12 O.S. §3237 is the Oklahoma state court equivalent to Fed.R.Civ.P. 37.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2001 OK CIV APP 27, 21 P.3d 65, 72 OBJ 901, ELMORE v. DOENGES BROTHERS FORD, INC.
Discussed
 2003 OK CIV APP 32, 68 P.3d 212, MINER v. MID-AMERICA DOOR COMPANY
Discussed
 2013 OK CIV APP 61, 307 P.3d 371, AGRAWAL v. DUKE ENERGY FIELD SERVICES, L.P.
Discussed
 1998 OK CIV APP 93, 964 P.2d 933, 69 OBJ 2542, Hotels Inc. v. Kampar Corp.
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 63, 733 P.2d 383, 57 OBJ 2361, Neese v. Shawnee Medical Center Hosp., Inc.
Discussed
 2001 OK 25, 21 P.3d 48, 72 OBJ 827, MEADOWS v. WAL-MART STORES, INC.
Discussed at Length
 1955 OK 361, 306 P.2d 309, MAGNOLIA PETROLEUM COMPANY v. ANGELLY
Discussed
 2005 OK 20, 111 P.3d 239, HARVEY v. CITY OF OKLAHOMA CITY
Discussed
 2007 OK 11, 156 P.3d 41, WHITEHORSE v. JOHNSON
Discussed
 2007 OK 19, 157 P.3d 738, HAGEN v. INDEP. SCHOOL DIST. NO. I-004
Discussed
 2008 OK 43, 186 P.3d 935, GARNETT v. GOVERNMENT EMPLOYEES INSURANCE COMPANY
Discussed at Length
 2008 OK 64, 188 P.3d 148, ASHIKIAN v. STATE ex rel. OKLAHOMA HORSE RACING COMM.
Discussed
 2008 OK 70, 188 P.3d 158, SCHOVANEC v. ARCHDIOCESE OF OKLAHOMA CITY
Discussed
 2008 OK 100, 197 P.3d 12, BARNETT v. SIMMONS
Discussed at Length
 2011 OK 45, 256 P.3d 64, DURHAM v. MCDONALD'S RESTAURANTS OF OKLAHOMA, INC.
Discussed
 2013 OK 44, 304 P.3d 738, IN THE MATTER OF H.M.W.
Discussed
 1978 OK 27, 575 P.2d 1374, BREEDEN v. LEAGUE SERVICES CORP.
Discussed at Length
 1978 OK 107, 581 P.2d 1309, DARROW v. SPENCER
Discussed
 1999 OK 93, 995 P.2d 1088, 70 OBJ 3452, Payne v. DeWitt
Discussed at Length
 1999 OK 94, 991 P.2d 1015, 70 OBJ 3622, State ex. rel. Oklahoma Bar Association v. Doris
Discussed at Length
 1999 OK 33, 987 P.2d 1185, 70 OBJ 1353, Patel v. OMH Medical Center, Inc.
Discussed
 1986 OK 3, 715 P.2d 74, 57 OBJ 522, Eddy v. Brown
Discussed at Length
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2011, Signing of Pleadings
Cited
 12 O.S. 3224, Short Title and Scope of Code
Cited
 12 O.S. 3236, 12 O.S. 3236, Requests for Admission
Cited
 12 O.S. 3237, 12 O.S. 3237, Failure to Make or Cooperate in Discovery - Sanctions
Discussed at Length
Title 23. Damages
 Cite
Name
Level

 23 O.S. 9.1, Damages for Sake of Example and Punishment of Defendant - Punitive Damages Awards by Jury
Discussed at Length